IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIERRE R. MANLEY, | ) | CASE NO. 3:04 CV 7351 |
| | ) | |
| Petitioner, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| ROSS CORRECTIONAL | ) | |
| INSTITUTION, Warden, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Respondent. | ) | |

## Introduction

Before the Magistrate Judge is Tierre R. Manley's petition for a writ of habeas corpus.[1]  Manley is incarcerated at the Ross Correctional Institution serving a sentence of 15 years to life with a consecutive three-year term for a firearm specification for his 2001 conviction by an Allen County, Ohio jury of murder with a firearm specification.[2]  The parties have consented to the jurisdiction of the Magistrate Judge.[3]

The parties participated in oral argument[4] and filed supplemental briefs.[5] Consequently, Manley now re-frames the three stated grounds for relief asserted in the

---

[1] ECF # 1.

[2] *Id.* at 2.

[3] ECF # 25.

[4] ECF # 27.

[5] ECF # 28 (Manley); ECF # 29 (state).

petition[6] into two arguments:  (1) that the failure of the state court to instruct the jury on the lesser-included offense of voluntary manslaughter was a miscarriage of justice;[7] and (2) that he received ineffective assistance of counsel.[8]

In response, the state maintains that Manley has no basis for federal habeas relief as to the denied jury instruction, since he was not entitled under Ohio law to an instruction on voluntary manslaughter,[9] and that the Ohio appellate court correctly applied clearly established federal law in denying relief for the ineffective assistance claim.[10]

For the reasons that follow, the Court will grant a conditional writ on the ineffective assistance ground.

---

[6] Manley originally alleged that the state court erred in not instructing the jury on a lesser included offense of voluntary manslaughter (ECF # 1 at 5); that he was denied the effective assistance of trial counsel (*id.*); and that the state improperly introduced evidence of prior bad acts (*id.* at 6).  On appeal to the Supreme Court of Ohio, Manley did not assert the improper introduction of evidence as a separate proposition of law but, rather, consolidated the argument into the ineffective assistance of counsel proposition.  It is arguable, therefore, that his failure to present improper introduction of evidence as a freestanding proposition prevents this Court from considering that ground apart from the context of ineffective assistance of trial counsel.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 8465 (1999).

[7] ECF # 28 at 1-6.

[8] *Id.* at 6-8.

[9] ECF # 29 at 1-2.

[10] *Id.* at 3-4..

## Facts and Proceedings in the State Courts

**A.**     **The underlying offense**

The Ohio appeals court described the underlying offense as follows:

In the early morning hours of June 2, 2001, the appellant shot Stephen Glover several times.  On June 3, 2001, Mr. Glover died as a result of the injuries he sustained from that incident. The shooting was apparently the result of a conflict that arose between Mr. Glover and the appellant on the night of June 1, 2001 while the two were playing pool at a local bar, Club Utopia. According to the appellant, he and Mr. Glover made a thirty dollar bet on a round of pool but, when he lost, Mr. Glover paid the appellant only twenty dollars.  At that point, an altercation ensued between the parties, which began inside the bar and continued outside.  According to defense witnesses, after the initial scuffle inside the establishment, the victim and several of his friends waited outside and attacked the appellant as he left the bar.

The parties then proceeded to a birthday party at the Fraternal Order of Police Hall, where yet another fight broke out between them.  Although there is conflicting testimony as to who started that altercation, several witnesses, including the defendant, alleged that the victim caught the defendant off guard, hitting him in the face with a beer bottle.  Eventually, due to another fight at the same location, the police arrived on the scene and sent the party-goers home.  According to the appellant, his cousin drove him to his mother's house so that he could nurse the injuries he received during the fights.

The appellant claims that he decided to go from his mother's house to his girlfriend's house, and that his cousin set out to drive him there.  On the way, the two passed by the intersection of Elm Street and Nye Street, near which Mr. Glover and his friends were congregated.  By the defendant's version of events, the appellant and his cousin stopped their vehicle because someone called out the appellant's name.  Thereafter, both the appellant and his cousin exited the vehicle and the appellant talked to Mr. Glover.  At this point, another fight commenced.  At trial, Mr. Manley claimed that Mr. Glover pulled a gun during the fight and that, simultaneously, a third person, George Elliot, began shooting.  The appellant claims that he wrestled the gun from Mr. Glover and began to fire, then tossed the gun into the street and fled in his vehicle.

Witnesses for the state, on the other hand, testified that the appellant and his cousin pulled up to the corner of Elm and Nye and remained in their vehicle. Mr. Glover then proceeded to the passenger side of the vehicle and spoke to the appellant, apparently in an effort to end the dispute. While still seated in the vehicle, the appellant produced a gun and shot Mr. Glover first in the head and then fired three or four additional shots at the victim as he lay in the street. The victim was taken to St. Rita's Medical Center, where he died the next day.[11]

## B.    State trial and conviction

Manley was indicted on one count of aggravated murder and one count of murder.[12] Prior to trial, the state sought, and was granted, dismissal of the murder charge.[13]

After a trial to a jury, Manley was found not guilty of aggravated murder, although the jury did find Manley guilty of the lesser-included offense of murder.[14] Manley was then sentenced to a term of 15 years to life on the murder conviction with an additional three years for a gun specification, such added time to be served prior to the sentence for murder.[15]

## C.    Direct appeal

Manley, through new counsel, timely appealed to the court of appeals raising the following three assignments of error:

    1.    The trial court erred by refusing to instruct the jury on voluntary manslaughter.

---

[11] *State v. Manley*, No. 1-01-159, 2002 WL 31323328, at *1 (Ohio App. 3d Dist., Oct. 18, 2002). A copy of this opinion is attached.

[12] *Id.*, at *2.

[13] *See*, ECF # 8 at 3.

[14] ECF # 10, Ex. 2.

[15] *Id.* at 3-4.

    2.      The trial court erred by permitting the introduction of evidence of specific details of the appellant's prior convictions in violation of Ohio Rule[s] of Evidence 609 and 404, denying his right to due process and a fair trial.

    3.      The appellant was denied the effective assistance of counsel.[16]

The state filed a brief in opposition.[17]  The Ohio appellate court rejected all of Manley's assignments of error and affirmed his conviction.[18]

Manley, proceeding with the same attorneys as had represented him before the court of appeals, then timely sought review by the Ohio Supreme Court, asserting two propositions of law:

    1.      As persuasiveness of the evidence is left to the jury, a defendant in an aggravated murder case is entitled to a jury instruction on voluntary manslaughter if, under any reasonable view of the evidence, despite an interval between earlier provocation and the killing, there is a separate provocation at the time of the killing that is reasonably sufficient to have brought on sudden passion or fit of rage and the defendant was actually under the influence of sudden passion or a fit of rage.

    2.      A criminal defendant is denied effective assistance of counsel when his lawyer elicits testimony in the defendant's case in chief that violates the defendant's right to confront his accusers, aids the state in proving elements of its case, and where defense counsel elicits and fails to object to [the] introduction of specific details of the defendant's past convictions.[19]

---

[16] ECF # 10, Ex. 3.

[17] *Id.*, Ex. 4.

[18] *Id.*, Ex. 5.  *See also*, *Manley*, 2002 WL 31323328.

[19] ECF # 10, Ex. 6.

The state did not file a memorandum in opposition. The Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.[20]  Manley did not seek a writ of certiorari from the United States Supreme Court.

## The Federal Habeas Petition

Manley, through the same counsel as had represented him from his state appeal, timely filed the present petition for a writ of habeas corpus asserting the following three grounds for relief:

1.    Petitioner was denied his 14th Amendment rights to due process and a fair trial by the trial court's refusal to instruct the jury on the lesser included offense of voluntary manslaughter.

2.    Petitioner was denied his 6th and 14th Amendment rights to the effective assistance of counsel.

3.    Petitioner was denied his 14th Amendment rights to due process and a fair trial by the state's introduction of extensive character evidence and specific details of petitioner's prior convictions and bad acts.[21]

## Analysis

**A.    The standards for federal habeas review**

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly

---

[20] *Id.*, Ex. 7.

[21] ECF # 1.

-6-

established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[22]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[23]  As stated by the United States Supreme Court in *Williams,* a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[24] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[25]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law

---

[22] 28 U.S.C. § 2254(d).

[23] *Williams v. Taylor*, 529 U.S. 362 (2000).

[24] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[25] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

erroneously or incorrectly."[26]  Rather, the state court holding may be disturbed only upon

showing that it was "objectively unreasonable."[27]

In addition, a state court may be found to have unreasonably applied clearly

established federal law if it unreasonably extends or unreasonably fails to extend a clearly

established federal legal principle to a new context.[28]

Finally, where a state court does not address the merits of a federal claim properly

presented to it, "the deference due [a state court decision by the federal habeas court] under

the AEDPA does not apply."[29]  Then, the federal court is to review the claim *de novo*.[30]

**B.      Ground two – ineffective assistance of trial counsel**

***1.       The clearly established federal law***

In *Higgins v. Renico*,[31] the Sixth Circuit recently re-stated the foundational rubric for

reviewing claims of ineffective assistance of counsel pursuant to the long-standing teaching

of *Strickland v. Washington*:[32]

---

[26] *Williams*, 529 U.S. at 411.

[27] *Id*. at 409.

[28] *Id.* at 405-07.  *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[29] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[30] *Id.*

[31] *Higgins v. Renico* 470 F.3d 624 (6th Cir. 2006).

[32] *Strickland v. Washington*, 466 U.S. 668 (1984).

-8-

Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[33]

The *Higgins* court then proceeded to delineate the applicable standards for evaluating each prong of the *Strickland* test.  It discussed seriously deficient performance in the following terms:

> When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms."  A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

> "Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a thorough investigation of the law and facts relevant to possible options."  Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference.  Indeed, such strategic choices are virtually unchallengeable.  As explained by the Supreme Court:

> > Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

---

[33] *Higgins*, 470 F.3d at 631.

and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[34]

The clearly established federal law of establishing prejudice from deficient performance of counsel was stated by the *Higgins* court as follows:

Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice.  In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt."  "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."  In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury."  A verdict "only weakly

---

[34] *Id.* at 631-32 (internal citations omitted).

supported by the record is more likely to have been affected by errors than one with overwhelming record support."[35]

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[36]

**2.   *Did the state courts reasonably apply clearly established federal law on ineffective assistance of counsel?***

*a.   Manley's position*

As Manley argues in his traverse, the essence of his trial strategy was to portray the killing of Stephen Glover as self-defense or, at worst, a response to a provocation by Glover.[37] Accordingly, "Manley's credibility was the key issue" in establishing to the jury both the self-defense claim and the alternative theory that Glover provoked a deadly response from Manley.[38] Both theories rested on Manley's claims that he got out of his truck to speak to Glover in the street,[39] that only the decedent was armed at the time of this confrontation,[40]

---

[35] *Id.* at 633-34 (internal citations and parenthetical comments omitted).

[36] *Id.* at 631 n.3.

[37] ECF # 14 at 1.

[38] *Id*. at 3.

[39] ECF # 19 at 812.

[40] *Id.*

that others were shooting at Manley during this episode,[41] and that during this struggle Manley acquired the gun from which he fired the fatal shot.[42]

In that context, Manley asserts that his trial counsel committed a critical error:  calling Lima police detective Paul Guidera as a defense witness and then permitting him to testify on direct examination about the content of interviews he conducted with three witnesses to the shooting.[43]  Guidera's testimony as to what he heard from these witness – persons who did not themselves testify in Manley's trial – was that Manley was the only person present at the scene with a gun;[44] that Manley never got out of his truck;[45] that the fatal shot came from inside Manley's truck, not as the result of a struggle in the street;[46] and that other shots were fired only when Manley was speeding away after shooting Glover.[47]

---

[41] *Id*. at 815.

[42] *Id.*  "Anyway, as we tussling and he [Glover] tried to pull it [a gun] out and whatnot and it ended up coming out and I got the front of it and I yanks it away.  During this time there's shots being – I'm getting – we're getting shot at."

[43] Detective Guidera's testimony about what these three witnesses – Jamie Wilson, Titus Brown and Tierre "T.T." Scales – told him concerning the shooting of Stephen Glover is in the state trial record (ECF # 19) at 592-609.

[44] ECF # 19 at 612.

[45] *Id.*

[46] *Id*. at 602-03.  "We asked that question [were other guns involved] of everyone.  They stated that after Stephen Glover was shot he fell to the ground.  Mr. Manley was in his pickup truck and it took off.  As it was taking off down the road several people said they heard other gunshots farther down the road."

[47] *Id.*

Moreover, even after doing all this damage to the defense version of the case, Manley's counsel explicitly failed in his strategy of using Detective Guidera's recollection of what these witnesses told police to impeach the witnesses' credibility. Asked directly by the prosecutor on cross-examination[48] if there were "any inconsistencies in [the witnesses'] statements collectively as to how this happened,"[49] the detective responded, "No, they all seemed to fit in."[50]

Eliciting this testimony – none of which Manley asserts could have been admitted as evidence as part of the prosecution's case-in-chief – "sabotaged the entire defense."[51]

In addition to bringing in the out-of-court statements of these witnesses, defense counsel, in questioning the detective on direct examination, read portions of the detective's search warrant affidavit into evidence[52] in which the shooting was called a "murder" and which further stated that the fatal shots were fired from Tierre Manley's truck, not, as

_____

[48] The prosecutor recognized the unusual nature of the defense calling a police investigator during its case in chief by beginning his cross-examination of Detective Guidera with the observation that "I have the rare opportunity to cross-examine a police officer." *See*, *id.* at 609.

[49] *Id*. at 612.

[50] *Id*.; *see also*, *id.* at 613. "[Question to Detective Guidera by the prosecutor]: Do you know of any information, have you any information whatsoever to indicate through your investigation that the incident did not occur the way these witnesses told you? [Answer by Detective Guidera]: No."

[51] *Id.*

[52] *Id*. at 591-92.

Manley's self-defense argument maintained, as the result of Manley wrestling a gun from the victim during a struggle in the street.[53]

Consequently, Manley argues:

Detective Guidera's testimony was simply devastating to the defense, as it not only brought a veteran law enforcement officer to the stand to testify against [Manley], it also afforded that officer the opportunity to bolster the credibility of each of the State's previous witnesses, opened the door to otherwise inadmissible evidence from the search warrant affidavit, and added three additional witness statements against [Manley] on the critical issues of [whether Manley or] decedent actually pulled out a gun first, and whether or not shots were being fired at [Manley] by another party at the time of the struggle between he and the decedent. Whatever the possible perceived value of calling the State's lead detective[54] as a witness for the defense, it was far eclipsed by the potential danger that the experienced detective would do what this detective did: make the State's case.[55]

In addition to eliciting this testimony of the police detective, Manley alleges that his trial counsel was constitutionally ineffective for not objecting to the introduction of prejudicial details concerning Manley's prior convictions. As noted, this was formerly an independent habeas ground that has now been recast as an element of the claim of ineffective assistance.

---

[53] *Id.*

[54] Although Manley here characterizes Guidera as the "lead detective," Guidera himself testified that he was not the lead investigator but was merely "assisting Detective Nolan in mainly doing interviews." *Id.* at 609.

[55] ECF # 14 at 24.

-14-

During the direct examination, defense counsel asked Manley about his juvenile criminal record.[56] Defense counsel elicited Manley's testimony that at age sixteen he committed two aggravated assaults – shooting two individuals – for which he was incarcerated from age 16 to age 25.[57] He also had Manley identify the names of the victims.[58]

Earlier, defense counsel asked other defense witnesses[59] about these prior offenses and did not object to testimony during cross-examination of Joe Pea that Manley was on probation at the time Stephen Glover was shot.[60] Defense counsel did object without success to the cross-examination question of Andre Manley that produced the evidence that Manley had shot one of his prior victims twice in the back.[61]

Defense counsel did not object during the cross-examination of Tierre Manley himself to questions that inferred that Manley's two earlier assaults were only two weeks apart;[62] that

---

[56] ECF # 19 at 772-73.

[57] *Id.*

[58] *Id.* at 773.

[59] Joe Pea, boyfriend of Manley's mother, and Andre Manley, the defendant's second cousin.

[60] ECF #19 at 576.

[61] *Id.* at 647-48.

[62] *Id.* at 818.

Manley could not recall shooting someone in the back;[63] and that Manley used a .45 caliber gun in the earlier shootings.[64]

Manley now asserts that while it may permissible under Ohio law to present limited evidence of past convictions,[65] and that defense counsel may properly pre-empt the state's introduction of the fact of a prior conviction for tactical reasons,[66] defense counsel here erred in allowing inadmissible evidence of the details of prior crimes to go before the jury and that this error was prejudicial to Manley.

*b.     The state's position*

The state responds by maintaining that the state court of appeals "applied *Strickland* correctly and reasonably" in concluding that no error was present in the representation afforded Manley at trial, or, even if an error can be established, that Manley was not prejudiced as a consequence of that error.[67]

The state's response here relies heavily on quotations from the appeals court opinion. The appellate decision, as quoted in the response, begins with the following standard of review:

---

[63] *Id*. at 819.

[64] *Id.*

[65] *See*, ECF # 14 at 26.

[66] *Id*. at 27.

[67] ECF # 8 at 12.

In asserting his ineffective assistance of counsel claim, the appellant must overcome the presumption that a licensed attorney is competent and that his decisions constitute sound trial strategy. We also note that *an appellate court reviewing an ineffective assistance of counsel claim will not second-guess counsel's strategy in direct and cross-examination of witnesses.* Furthermore, debatable tactical decisions generally do not constitute a depravation of effective counsel.[68]

After invoking this standard of review, the state panel then addressed the issue of whether Manley's defense counsel had committed error in calling and questioning the detective.  The court observed that, in its view, much of the direct examination of Detective Guidera was intended to "challenge the credibility of a state's witness who changed his story to police."[69]  Furthermore, following the rule it had just cited, the appeals court concluded that the decision to put the detective on the stand was "a debatable tactical decision, which we decline to second-guess."

As to any alleged error in admitting details of past convictions, the Ohio appeals court simply noted that the door to admitting these details had been opened by Manley's counsel.[70] In addition, it then determined that deciding on a defendant's direct examination to "bring past convictions to light" so as to "'take the sting out'" of such evidence is a "fairly common trial tactic" that does not constitute ineffective assistance.[71]

---

[68] *Id.*, quoting *Manley*, 2002 WL 31323328, at *4 (footnote omitted; emphasis added).

[69] *Id.*, at *13.

[70] *Id.*

[71] *Id.*

*c.*   *The state court unreasonably applied clearly established federal law on ineffective assistance of counsel.*

Beginning with the standard of review it chose to employ, the decision of the Ohio appeals court as to deficient performance with respect to the testimony of the police detective was not a reasonable application of the clearly established federal law on this issue.

As noted, federal law is plain that defense counsel is entitled to a strong presumption of having rendered reasonable professional service. In addition, clearly established federal law is that a habeas court must afford great deference to counsel's strategic decisions. But that deference is not equivalent to the reviewing court turning a blind eye when presented with a "preponderance of evidence [] that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"[72]

Specifically, the "great deference" owed to counsel's strategic choices is due only *if* those choices were made "after thorough investigation of the law and facts *relevant to possible outcomes*."[73]  As the Sixth Circuit noted in *Combs v. Coyle*,[74] "'[O]ur case law rejects the notion that a "strategic" decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them.'"[75]  Accordingly, contrary to the state court, there is no special category of trial conduct, no absolute "safe

---

[72] *Higgins*, 470 F.3d at 632, quoting *Strickland*, 466 U.S. at 687.

[73] *Id.*, quoting *Strickland*, 466 U.S. at 690 (emphasis added).

[74] *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000).

[75] *Id.* at 288, quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991).

-18-

harbor," including the direct examination of witnesses, where any and all actions of counsel are totally shielded from review by an impenetrable cloak of deference.

Here, Manley's counsel should have known through his own investigation of Detective Guidera's role in the case and a basic familiarity with the witness list that the detective had personally interviewed three purported witnesses who would not themselves testify at Manley's trial and whose story would, if heard by the jury, directly contradict his client's.  Calling Detective Guidera and then, through him, intentionally bringing before the jury the stories of the three uncalled, unsworn, uncross-examined witnesses in direct contradiction to his own client's testimony is inexcusable.

Whatever limited merit there may have been in seeking to establish through Detective Guidera the identity of those present at the scene and to partially discredit one of the uncalled witnesses as a person who later changed his story,[76] defense counsel's action in conducting the direct examination of Detective Guidera as he did had the undeniable effect of directly discrediting his own client's credibility on a central tenet of the defense's case – self-defense – and was, therefore, more than "a debatable tactical decision,"[77] but was objectively unreasonable. The finding of the state appeals court to the contrary was, accordingly, not a reasonable application of the clearly established federal law of *Strickland*.

---

[76] *See*, *Manley*, 2002 WL 31323328, at *4, as to these being the possible strategic reasons for defense counsel calling Detective Guidera.  It remains unclear in the state court's opinion why it would be necessary to discredit a witness who had not testified in the first place and whose testimony would not be before the jury and in need of discrediting but for the act of defense counsel.

[77] *Id.*

As to defense counsel both eliciting and then failing to object to testimony concerning details of past crimes involving Manley, the state appeals court merely noted that defense counsel had himself opened the door to such evidence and further observed that having the defendant himself bring past convictions to light was "a fairly common trial tactic" that did not rise to the level of ineffective assistance of counsel.[78]

However, defense counsel here did substantially more than utilize the standard tactic of having a defendant be the one to inform a jury of any past convictions before the state can introduce such evidence. Rather, defense counsel, with one exception, either directly elicited or did not object to the prosecutor eliciting evidence of such significant details as the defendant using a .45 caliber gun – the same type of weapon as was used in Glover's killing – in his prior crimes to shoot two victims in the back and then not being willing to acknowledge that to the jury. Those details can only have reinforced the point to the jury that Manley did something very much like this before and, therefore, is likely to have done it again.

Therefore, as with the testimony of Detective Guidera, the conclusion by the state appeals court that defense counsel here did no more than employ a "fairly common trial tactic" with respect to Manley's past convictions is not a reasonable application of the deficiency prong of *Strickland*.

Moreover, as to the prejudice element of *Strickland*, that state appeals court was also unreasonable in concluding that no prejudice occurred as a consequence of either the

---

[78] *Id.*

-20-

testimony of Detective Guidera or the evidence of past convictions.  In both circumstances, the errors directly undercut Manley's credibility.

The totality of the other eyewitnesses' testimony against Manley and in support of the state's case – Ronald Dillingham, an ex-con with a conviction for sale of crack cocaine;[79] Jamie Wilson, who testified to having smoked two cigars filled with marijuana and consumed beer on the day of the shooting;[80] and Titus Brown, a cousin of Jamie Wilson[81] – were all friends of the decedent and all part of a gang called the Westside Boys made up of persons convicted of selling drugs.[82] Weighing their testimony that Manley was the sole, unprovoked shooter against Manley's defense, a reviewing court cannot be confident that a jury would believe these witnesses in the absence of the damage to Manley's credibility.  Therefore, there is a "reasonable probability" that, but for defense counsel's errors, the verdict reached here would have been different.

Accordingly, Manley's petition for habeas relief on this ground is well-taken and he is entitled to the grant of a conditional writ.

---

[79] ECF # 18 at 289-377.

[80] *Id*. at 426-27.

[81] *Id*. at 532.

[82] *See*, *id.* at 428-30.

C.      **Ground one – instruction as to lesser-included offense**

1.      *The clearly established federal law*

In *Bagby v. Sowders*,[83] the Sixth Circuit considered whether a state defendant in a non-capital case had a federal constitutional right to have the jury instructed on a lesser included offense.  Initially, the *Bagby* court "squarely rejected" the notion that due process requires the giving of such an instruction where it is supported by the evidence.[84]  In so ruling, *Bagby* found that the failure to give an instruction on a lesser included offense, even where it is warranted by the evidence, "is not such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[85]

But *Bagby* further held that a failure to instruct could conceivably give rise to a cognizable federal habeas claim where "a fundamental miscarriage of justice is found to have resulted from the unsupportable denial of a lesser included offense instruction in clear defiance of state law."[86]  Because "it is not the function of a federal habeas court to correct errors of state law," the writ should be granted on the basis of a failure to instruct only under

---

[83] *Bagby v. Sowders*, 894 F.3d 792 (6th Cir. 1990) (en banc).

[84] *Todd v. Stegall*, 40 F. App'x 25, 28 (6th Cir. 2002), citing *Bagby*, 894 F.2d at 797.

[85] *Id.*

[86] *Bagby*, 894 F.2d at 795.

"the most unusual circumstances," such as when the failure to give the instruction likely "resulted in the conviction of an innocent person."[87]

Indeed, this is consistent with federal habeas law wherein the phrase "fundamental miscarriage of justice" is understood to mean conviction of one who is actually innocent.[88] As the Supreme Court has stated, "[W]e 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"[89]

**2.      *Did the state court reasonably apply clearly established federal law on fundamental fairness of failure to instruct on a lesser included offense?***

Here, Manley asserts that he is entitled to federal habeas relief as a result of the trial court's error in not giving an instruction on voluntary manslaughter.[90]  He contends that the state court erroneously relied on an outdated and overruled Ohio precedent that a defendant who asserts a complete defense (such as self-defense) may not also receive an instruction as to a lesser included offense, but must chose between the two.[91]

While, arguably, Manley has made a case for finding that the state court misread Ohio law and should have instructed the jury on voluntary manslaughter, it does not necessarily

---

[87] *Todd*, 40 F. App'x at 28, quoting *Bagby*, 894 F.2d at 795.

[88] *See*, *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

[89] *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991), quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[90] ECF # 28 at 1.

[91] *Id.* at 2.

follow that he has established the "most unusual circumstance" of a fundamental miscarriage of justice, *i.e.*, the conviction of an innocent person.

Inasmuch as Manley has not met the test for obtaining habeas relief for failure to give a lesser included offense instruction in a non-capital case, his petition in this regard is denied.

## Conclusion

Based on the foregoing analysis, the Court grants a conditional writ of habeas corpus, subject to Manley being retried by the state on the petition's second ground that Manley received ineffective assistance of counsel at trial in violation of his rights under the Sixth and Fourteenth Amendments.  Accordingly, Manley's judgment and conviction in *State of Ohio v. Tierre R. Manley*, Allen County Court of Common Pleas No. CR 2001 0257, is vacated and set aside, and Manley must be released from custody unless the State of Ohio commences a new trial against him within 120 days after the judgment herein becomes final.

For the reasons stated above, grounds one and three of Manley's petition are denied.

IT IS SO ORDERED.

Dated:   March 16, 2007                                    s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge

-24-