IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIERRE R. MANLEY, | ) | CASE NO. 3:04 CV 7351 |
| | ) | |
| Petitioner, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| ROSS CORRECTIONAL | ) | **MEMORANDUM OPINION** |
| INSTITUTION WARDEN, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |

## Introduction

Before me is habeas petitioner Tierre Manley's motion for release from prison under Federal Appellate Rule 23(c).[1]  Manley argues that the conditional writ he was granted has now become unconditional.[2]  His argument is that despite a specific provision of the writ, the State failed to re-try him, release him, or request a stay within 120 days of that writ "becoming final."[3]  The State counters Manley is not entitled to release.[4]  The State argues that the 120-day period given by the writ to retry Manley or release him has not yet begun to run, because the writ itself will not "become final" until the present appeal concludes.[5]

---

[1] ECF # 35.

[2] *Id*. at 1.

[3] *Id*.

[4] ECF # 36 at 1, and ECF # 37 at 1-2.

[5] *Id.*

For the following reasons, I conclude that the writ became final when it was entered on the docket of this Court, not upon exhaustion of appeal.  Therefore, the 120-day period provided to the State for requesting a stay, retrying Manley, or releasing him has elapsed.  The conditional writ granted by my judgment has become unconditional  Manley is eligible for release under the terms of Appellate Rule 23(c).  The motion to stay the unconditional writ must be denied and the motion for release granted subject to terms established at a future hearing conducted pursuant to this order.

The State has, however, now filed for a stay of Manley's release.[6]  The facts in the record, however, do not support my granting the State's request for a stay.  Manley's now vacated[7] murder conviction[8] pending upon appeal,[9] and Manley's having served less than half the years in custody until he becomes eligible for parole on his life sentence[10] both suggest the possibility that Manley is a flight risk.  The State also urges that Manley is a violent criminal from whom the public must be protected.  As explained below, the State has not

---

[6] ECF # 36 at 2-3.

[7] ECF # 30 at 24.

[8] *State v. Manley*, No. 1-01-159, 2002 WL 31323328, at *1 (Ohio App. 3d Dist., Oct. 18, 2002).

[9] ECF # 34.

[10] *Manley*, 2002 WL 31323328, at *1, *see also*, ECF # 30 at 4 (the length of sentence was noted, as well as date of incarceration, and can be compared to the current date).

overcome the powerful presumption of Manley's right to be released pending appeal arising out of my previous decision,[11] and Manley's likelihood to prevail upon appeal.

## Facts

The memorandum opinion and order given by this Court lays out the facts in greater detail at ECF # 30 on pages 3-6.  I shall only give a cursory summary of the facts here.  The State indicted Manley on one count of aggravated murder and one count of murder in connection with the shooting death of Stephen Glover in the early morning hours of June 2, 2001.[12]  Prior to trial, the State sought and was granted dismissal of the murder charge.[13]

After a jury trial, the jury found Manley not guilty of aggravated murder, although they did find Manley guilty of the lesser-included offense of murder.[14]  The court then sentenced Manley to a term of 15 years to life on the murder conviction with an additional three years for a gun specification, such added time to be served prior to the sentence for murder.[15]  Manley timely appealed to the court of appeals raising three assignments of error, including the denial of effective assistance of counsel.[16]  The Ohio Appellate court rejected all of Manley's assignments of error and affirmed his conviction.

---

[11] ECF # 30 at 24.

[12] ECF # 30 at 3.

[13] *Id*. at 4.

[14] *Id.*

[15] *Id*.

[16] *Id*.

Subsequently, Manley timely sought review by the Ohio Supreme Court, asserting two propositions of law, including the aforementioned denial of effective assistance of counsel.[17] The Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.[18]

Manley then timely petitioned for a writ of habeas corpus, asserting three grounds for relief, including the assertion that Manley was denied his Sixth and Fourteenth Amendment rights to the effective assistance of counsel.[19]  I agreed with Manley that his Sixth and Fourteenth Amendment rights had been violated due to ineffective counsel.[20] Pursuant to this judgment, I granted a conditional writ of habeas corpus, stating "Manley must be released from custody unless the State of Ohio commences a new trial against him within 120 days after the judgment herein becomes final."[21]  Judgment was entered on March 16, 2007.[22]

---

[17] *State v. Manley*, 98 Ohio St. 3d 1479, 784 N.E.2d 712 (Mar. 12, 2003) (table decision).

[18] *Id*.

[19] ECF # 1.

[20] ECF # 30 at 18-21.

[21] *Id*. at 24.

[22] ECF # 31.

The State then timely filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit on April 12, 2007.[23]  The State failed to ask for a stay of my judgment until May 29, 2008.[24]

## The Motion for Release

Manley filed the present motion for release after the 120-day conditional writ period elapsed under Rule 23(c) of the Federal Rules of Appellate Procedure on the following reasoning:

1.  This Court granted Manley a conditional writ of habeas corpus approximately one year prior to the motion, directing Manley's release unless the State of Ohio provided to him a new trial within 120 days of the issuance of the conditional writ.  That time frame having expired, the conditional writ is now an unconditional writ, and, therefore, the Court has issued an order for Manley's release.

2.  There is no automatic stay of the Court's ruling by virtue of the decision's appeal to the Sixth Circuit Court of Appeals, where the case is pending.

3.  Even if the stay requested by the State on May 29, 2008 were granted, the stay would have no effect upon the release requested in the petition.

4.  The State's requested stay should be rejected.[25]

---

[23] ECF # 32.

[24] ECF # 36.

[25] *See*, ECF # 35, 1-2.

**Analysis**

Manley's motion presents me with two separate and distinct questions:  First, whether the conditional writ has become an unconditional writ by virtue of the State's inaction.  Second, whether there are appropriate grounds under Rule 23(c) of the Federal Rules of Appellate Procedure to mandate to release of Manley pending the decision on appeal.  I will address each of these questions in turn.

**A.     Has the conditional writ become an unconditional writ by virtue of the State's inaction?**

**1.     *There is no automatic stay without action beyond the State's filing of an appeal*.**

In a habeas proceeding, the mere pendency of an appeal does not stay the district court's decision granting a writ.  Civil Rules 62(a) and 62(c) clearly provide that only in specific circumstances identified by the rules does the filing of an appeal result in an automatic stay of the district court's decision.  These exceptions do not a decision granting a habeas writ.

There are numerous cases from the Sixth Circuit and elsewhere in which states have requested stays from district court judgments granting conditional habeas writs.[26]  The state movants in these cases obviously did not believe that filing appeal sufficed to stay the writs.

---

[26] *See*, *Carter v. Wolfenberger*, 2007 WL 671386, at *1 (E.D. Mich. 2007) (The court held that when the district court issued a conditional writ ordering the state to release Carter, (a) unless he was retried within ninety days of the date of the order or (b) unless the state obtained a stay on the judgment, then Rule 23(c) would apply and a presumption of release would exist.); *Moore v. Haviland*, 2007 WL 4460610, at *1 (N.D.  Ohio 2007); *Burdine v. Johnson*, 87 F. Supp. 2d 711, 713-14 (S.D. Tex. 2000); *Hanna v. Price*, 2006 WL 62825, at *1 (W.D. Mich. 2006).

**2.      Has the State violated the conditions to the conditional writ?**

a.      *"Judgment herein becomes final" refers to the date of judgment entry.*

Implicit in the Manley's argument is the contention that "within 120 days after the judgment herein becomes final" shall be tallied from the date of the judgment's entry.[27]  The State, however, contends that there is an alternative interpretation of the word "final" more appropriately applied in this case.

The reference to "judgment herein becomes final" in the judgment entry herein means "final judgment."  The term "final judgment" appears in the Federal Rules of Civil Procedure at Rule 54(a), which defines "judgment" as "a decree and any order from which an appeal lies."  This is the generally accepted definition of the meaning of "final judgment"– that the judgment be appealable.[28]  The Supreme Court has recently reemphasized that the term final judgment means "appealable," that the trial court has nothing left to decide, and that the

---

[27] ECF # 35 at 1 (stating that the time frame set forth in the conditional writ has expired).

[28] *Sullivan v. Finkelstein*, 496 U.S. 617, 618 (1990) (Final judgment may have several meanings as defined by Congress to fit the situation, but the term final judgment is usually coupled with the meaning "appealable.").

judgment may be appealed.[29]  If a judgment is final, then the prevailing party may execute

on it, absent a stay, and the losing party make take an appeal.[30]

The State argues that in *Plaut v. Spendthrift Farm*[31] and *Griffith v. Kentucky*[32] the

Supreme Court seemed to suggest an alternative interpretation to the meaning of final

judgment or final decision.  These cases both involve the issue of retroactivity,[33] which does

not exist in this case.  The retroactivity question refers to whether a new rule of law

pronounced by the Supreme Court should be applied to permit the reopening of closed cases.

These decisions very carefully note that "final" in the context of retroactivity has a very

---

[29] *Riley v. Kennedy*, 2008 WL 2167990, at *8 (E.D. Mich. 2008), citing to *Catlin v. U.S.*, 324 U.S. 229, 233 (1945).

[30] *See*, *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 203 (1999) (after final judgment, the losing party may then appeal the decision), *see also*, *In re Audre, Inc.*, 202 B.R. 490, 492 (Bkrtcy. S.D. Cal.,1996) (after final judgment the judgment may be executed absent a stay), *and*, *e.g.*, *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 274 at n.4 (1991) (equating the timing of "final judgment" with the entry of judgment); *see also, Flanagan v. U.S.*, 465 U.S. 259, 263-264 (1984) (interchangeably using "final judgment" with "entry of final judgment").

[31] *Plaut v. Spendthrift Farm*, 514 U.S. 211 (1995).

[32] *Griffith v. Kentucky*, 479 U.S. 314 (1987).

[33] *See, Plaut* 514 U.S. at 244 ("this case falls directly within the scope of language of this Court's cases suggesting a restriction on *Congress*' power to reopen *closed court judgment*" (emphasis added) noting that the case was concerned not with the nature of the finality, so to speak, of court judgments subject to review by other courts, but Congress' power to interfere therein); *Griffith*, 479 U.S. at 321 ("*for the purposes of applying the three factors* [laid out in *Linkletter v. Walker*] 'no distinction is justified between convictions now final ... and convictions at various stages of trial and direct review" (emphasis added) the court was limiting the applicability of the language in *Linkletter* to similar or analogous cases – *Linkletter v. Walker*, 381 U.S. 618, 622 (1965) being a case involving "retrospectivity," *i.e.*, retroactive power of statutes.).

specialized and limited meaning tailored to that context. Finality in the *Plaut* and *Griffith* context does not, and practically cannot affect when a decision becomes final for purposes of appeal under 28 U.S.C. § 1291.[34] *Plaut* and *Griffith*, therefore, do not apply to interpret the language of my judgment entry here.

Additionally, the State cites the language of 28 U.S.C. § 2244(d)(1)(A), suggesting that the "similarity in language" to the federal statute of limitations on federal habeas actions suggests that the word final should carry the meaning "exhaustion of appeal."[35] However, the statute in relevant part reads "the date on which the judgment became final *by the conclusion of direct review or the expiration of the time for seeking such review*."[36] If the word "final" in this statute means the exhaustion of appeal, then the emphasized section of the statute is redundant and, therefore, has no meaning. The only logical conclusions are that Congress intended the word final, within the limited context of federal habeas review of a state criminal judgment, to carry a very specific meaning.

Lastly, the State contends that the words this "decision herein becomes final" cannot be interpreted to mean when the judgment is entered into the docket. The State argues that for this passage to mean "when the judgment is entered" renders the word "final" in the

---

[34] *E.g.*, 28 U.S.C. § 1291(a) ("The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States," which implies that if the decision of the district court were not a final judgment, then the court of appeals will not have a basis for jurisdiction. If exhaustion of the appeal is the general definition of the word "final," this passage becomes an absurdity.).

[35] ECF # 36 at 1.

[36] 28 U.S.C. § 2244(d)(1)(A) (emphasis added).

decision meaningless and, therefore, is illogical upon its face.[37]  The State asserts that when the "judgment becomes final" and the word "judgment" are substantially the same if "final" is interpreted to mean entry of judgment.[38]  The State claims, therefore, this could not be the correct interpretation of "final" in this context.[39]  They argue "final" should be instead be read to indicate "at a later time"[40] and by implication the exhaustion of review.

Contrary to the State's assertions,[41] the interpretation of "final" to mean "entry into the docket" is not meaningless.  That a word or phrase has a generally accepted use does not make its use a triviality.  The inclusion of the term "judgment herein becomes final" serves to tell the parties when the 120-day limit begins to run.  It removes any confusion that "judgment" may refer to the date the memorandum opinion and order issued; when judgment was entered on the docket; or when the court ruled on a timely motion to amend or alter judgment, if one was filed.  To read "judgment becomes final" to mean anything but entry of judgment distorts the intention of this Court, as well as contradicts a well established definition of "final judgment."

---

[37] ECF # 36 at 2.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

*b.*      *Consequently, the State has violated my conditions granted in the conditional writ.*

The State failed to grant Manley a new trial within 120-days of the entry of judgment on March 16, 2007.  Thus the State has violated the conditions of the conditional writ of habeas corpus.

**3.**      ***If approved, does the stay requested on May 29, 2008 have the effect of preventing the conditional writ from becoming unconditional?***

The State requested a stay for the first time on May 29, 2008.[42]  The State does not indicate what the effects of the stay would be, if granted, with respect to the conditional or unconditional nature of the writ.  This silence is with good reason.  If a stay is requested after the conditions to the conditional writ have already been violated, the stay cannot retroactively prevent the conditional writ from becoming an unconditional writ.[43]  A stay only has the effect of preventing execution of the judgment as it stands at the time the stay is granted, not as the judgment was when it was first entered.[44]

---

[42] ECF # 36 at 2.

[43] *Burdine*, 87 F. Supp. 2d at 713 ("[an appeal] did not automatically stay the Order [of the district court] or relieve the State of its obligation to comply with the order.  Nor did the State seek a stay of the Order within the 120-day period pursuant to Federal Rule of Appellate Procedure 8 and Federal Rule of Civil Procedure 62.  *Absent such a stay from either the district court or the court of appeals, the State was required to comply with the order by either retrying Burdine or releasing him from prison, within 120 days*." (Emphasis added, footnotes omitted)).

[44] *Id*. at 716 ("If a stay had been sought and granted within the 120 days, the State would have been temporarily absolved of its duty to act pending resolution of its timely filed appeal, and the conditions triggering the issuance of the writ would have been suspended. The State, however, failed to act in a timely fashion, and cannot preclude the issuance of the writ because the window of opportunity afforded by the cognitional order has passed.").

As explained earlier,[45] the terms of the conditional writ have already been violated when the State requested the stay.  Therefore, the requested stay cannot prevent the conditional writ from becoming unconditional.[46]  The stay's merits need not be further discussed at this time.[47]

**4.** ***The effect of the State's failure to comply with the conditions to a conditional writ is for the conditional writ to become an unconditional writ.***

Notwithstanding the arguments contained in the sur-reply from the State on the present motion,[48] Manley is correct in asserting that if the State's violation of the conditional writ renders the conditional writ unconditional.  It is well established federal law that if the conditions of a conditional writ are violated through inaction by the state, the conditional writ becomes unconditional.[49]

This general rule arises out of the nature of conditional writs.  Conditions are accommodations that give states the opportunity, within a reasonable time period, to remedy

---

[45] *Supra* at 8.

[46] *Id.*, *see also*, *Wanatee v. Ault*, 120 F. Supp. 2d 784, 788 (N.D. Iowa, 2000).

[47] *Infra* at 18.

[48] Which had been submitted without first seeking the permission of this Court but, nonetheless, whose arguments were considered and rejected by this Court.

[49] *See*, *Burdine*, 87 F. Supp. 2d at 716; *see also*, *Wanatee*, 120 F. Supp. 2d at 788 (The court stated that when the state violated the conditions upon which Wanatee's conditional writ had been specified, the conditional writ became an order for Wanatee's release.).

the constitutional defect that gave rise to the conditional writ.[50]  Where the state, by its own choice or omission and without interference from the petitioner, chooses not to take the opportunity afforded by the accommodation, it has defaulted its opportunity to remedy its constitutional defect, and the writ becomes an active order for release.[51]

The State claims in its sur-reply that *Gibbs v. Frank* establishes the proposition that the Court has "continuing jurisdiction to enforce a conditional writ, or to modify it as necessary," and implies that this means "that a conditional writ does not become an unconditional writ 'by operation of law.'"[52]  The State's characterization of *Gibbs* is mistaken.

The nature of the *Gibbs* court's ruling was based not upon the district court's power to retroactively amend the conditions to the ruling, but its discretion to interpret that ruling in light of the state rules of procedure.  The Third Circuit held in *Gibbs* that district courts have the discretion to apply "*state rules as a basis for exercising its broad habeas discretion*"[53] to excuse minor defects in a state's noncompliance with conditions of conditional writs.  This discretion could be exercised where the state made an active attempt

---

[50] *Phifer v. Warden*, 53 F.3d 859, 864-65 (7th Cir. 1995) (as quoted by *Burdine*, 87 F. Supp. 2d  at 716) ("Conditional orders are essentially accommodation accorded to the state;" however, the "failure to cure the error ... justifies the district court's release of the petitioner.").

[51] *Burdine*, 87 F. Supp. 2d at 716, *House v. Bell*, 2008 WL 2235235, at *3 (E.D. Tenn. 2008) (a state's failure to timely cure the error identified by a federal district court in its conditional habeas order justifies the release of the petitioner).

[52] ECF # 39 at 2 (citing *Gibbs v. Frank*, 500 F.3d 202, 208 (3d Cir. 2007)).

[53] *Gibbs*, 500 F.3d at 210 (emphasis added).

to comply, and the petitioner was also at fault in the non-compliance.[54]  *Gibbs* specifically reasons that in this specific circumstance, "any delay brought about by a *continuance request from the defense should not be included in ... the time frame*"[55] and permitted the district court's invocation of Pennsylvania State Rules in interpreting the meaning of the term "within 120 days."[56]  This was an interpretation of a previously created condition in light of a relevant state rule at the court's discretion, not a wholesale amendment of the conditional in its entirety.

The facts here differ from those of *Gibbs*.  Here, the appellant suggests no Ohio state rule that potentially excuses the State's failure to obey the conditions of the writ.  Furthermore, there is no indication that Manley in any way is at fault in the State's noncompliance.  Nor does the State's much belated requested stay, which came a full 440 days[57] after the entry of judgment, constitute a *minor* defect in compliance.  The *Gibbs* opinion has no application in this case.

---

[54] *Id*. at 208 (citing to *Gilmore v. Bertrand*, 301 F.3d 581, 583 (7th Cir. 2002)).

[55] *Gibbs*, 500 F.3d at 210 (emphasis added).

[56] *Id*. at 209.

[57] *See* ECF #31 (filed 3/16/2007) and ECF #36 (filed 5/29/08).

**B.**  **Should Manley be released pending the Sixth Circuit's decision?**

*1.*  *The State's request for a stay is rejected.*

Whether or not a stay should be granted upon a given judgment is determined by my application of the four relevant factors laid out in *Hilton v. Braunskill*.[58]  The factors are as follows:

1.  Likelihood of state's success on the merits,

2.  Whether the state will be irreparably harmed if the habeas petitioner is released,

3.  Whether a denial of Manley's motion for release from custody would substantially injure other parties interested in the proceedings, and

4.  The best interest of the public.[59]

*Hilton* cautions that application of the factors should not be reduced solely to a "set of rigid rules" and recommends courts also take into account various factors such as petitioner's risk of flight and risk of danger to the public if released.[60]  The *Hilton* court goes on to note that each of the other factors will be colored by whatever determination is made with regard to the appellant's likelihood of success on appeal, and Manley's success "may depend in large

---

[58] *Hilton v. Braunskill*, 481 U.S. 770, 774 (1987).

[59] *See*, *Hilton*, 481 U.S. at 774, n.2; *see also*, *Workman v. Tate*, 958 F.2d 164, 166 (6th Cir. 1992).

[60] *Moore*, 2007 WL 4460610, at *1.

extent upon the determination of the State's prospects of success in its appeal."[61]  I will now consider each factor in turn.

a.      *Factor 1:  Likelihood of State's success on the merits*

It appears highly unlikely that the State will prevail upon appeal and, therefore, this factor supports the rejection of the stay.  The State argues that this Court erred in relying on facts not supported by the state court record and failed to accord proper deference to the facts as determined by the state court.[62]  The State, therefore, argues that this Court erred in its determination of granting a conditional writ of habeas corpus, and the State will likely prevail upon appeal.[63]

It is clearly established in the state court record that Manley's trial counsel committed what can only be described as a critical error.  Manley's trial counsel called Paul Guidera, a Lima police lieutenant.[64]  Guidera's status as a police officer made his testimony more likely to be given greater weight by a jury.  Defense counsel proceeded to elicit from Guidera the stories of "three uncalled, unsworn, uncross-examined witnesses in direct contradiction to [defense counsel's] own client's testimony."[65]  I noted that defense counsel's actions undeniably discredited his own client's credibility, with regards to a central tenet of Manley's

---

[61] *Workman*, 958 F.2d at 167 (quoting *Hilton*), *Hanna v. Price*, 2006 WL 62825, at *1 (W.D. Mich 2006).

[62] ECF # 36 at 3.

[63] *Id*.

[64] ECF # 19 at 592-609.

[65] ECF # 30 at 19.

case – self defense.[66]  This was "more than a 'debatable tactical decision,' but was objectively unreasonable."[67]

Given these facts and the legal standards established in the Court's decision,[68] I conclude that it is highly doubtful that the State will prevail upon appeal.  This factor favors rejecting the stay.

b.      *Factor 2:  Whether the State will be irreparably harmed if the habeas petitioner is released*

The State has only weak support for the second factor.   In *Poindexter v. Booker*,[69] the court noted that "the State does not have a defensible interest in the continued incarceration of someone whose conviction was obtained in violation of his constitutional right to effective counsel."[70]  Manley's conviction was vacated by this Court because of the State's violation of Manley's constitutional right to counsel[71] and, thus, cannot serve as the State's justification for Manley's continued imprisonment.

It is also an unpersuasive argument for the State to say that the Court is requiring the State to retry Manley simultaneously to the appeal.  Having decided to appeal, the State could

---

[66] ECF # 19 at 612, ECF # 30 at 21.

[67] ECF # 30 at 19.

[68] *Id*.

[69] *Poindexter v. Booker*, 2007 WL 2780556 (E.D. Mich. 2007).

[70] *Id.*, at *3.

[71] ECF # 30 at 21.

have timely sought a stay of the conditional writ.  It failed to do so.  Having failed to do so,
Manley is entitled to seek release under Appellate Rule 23(c).

Lastly, since Manley potentially faces retrial[72] and stands indicted by a grand jury of
murder even should he prevail upon appeal, Manley may pose a flight risk.  This fact is
accentuated by the fact that Manley has served less than half of the 18 years necessary to
obtain parole eligibility, and the maximum extent of his incarceration was life in prison.[73]
The State has some legitimate interest in seeing Manley's continued incarceration to prevent
his possible flight.

c.      *Factor 3:  Whether a denial of Manley's motion for release from custody would
        substantially injure other parties interested in the proceedings*

There is a longstanding presumption in American jurisprudence that an individual is
innocent until proven guilty.  Thus, when a petitioner is ordered free by a writ of habeas
corpus and subsequently vacates the underlying conviction, a petitioner's continued
incarceration will generally be considered to be a substantial injury to that petitioner's
interest.[74]  However, courts have found a petitioner's interests not to be injured with respect
to a stay in cases where the petitioner had other outstanding reasons for incarceration, such

---

[72] *Infra* at 19.

[73] *Manley*, 2002 WL 31323328, at *1; *see also*, ECF # 30 at 4 (the length of sentence
was noted, as well as date of incarceration and can be compared to the current date).

[74] *See*, *Hilton*, 481 U.S. at 777 ("the interest of the habeas petitioner in release pending
appeal [is] always substantial").

-18-

as concurrent prison sentences not being challenged[75] or habeas petitions based on the premise that the petitioner was unfairly deprived of an insanity plea.[76]

The State points out that Manley was sentenced to 15 years to life in prison, and does not gain eligibility for parole for a great many more years.[77] The State is poorly reasoned when it argues that this means Manley's continued incarceration for a "short while longer" while the appeal is pending is not a substantial injury.[78] Rule 23(c) was written for the purpose of protecting the interests of habeas petitioners who were ordered free by the district courts during that "short period," and the injuries suffered by Manley are in no way mitigated by comparison to an even longer presumably unjust imprisonment.

Since Manley has a high likelihood of success in the appellate court, and Manley has no alternative and legitimate reason for continued incarceration, a stay would substantially injure Manley. Factor three favors a denial of the stay.

---

[75] *Moore*, 2007 WL 4460610, at *2 (petitioner was also imprisoned on six unrelated state cases whose prison sentences ran concurrently to the sentence in question), *Wanatee*, 120 F. Supp. 2d at 788 (If affirmed on appeal, petitioner's claim would have merely had the effect of reducing his conviction to second degree murder, not exoneration of the petitioner. Therefore, petitioner would still face up to a fifty-year sentence and thus petitioner had little interest.).

[76] *Hanna*, 2006 WL 62825, at *2.

[77] ECF # 36 at 3.

[78] *Id*.

d.      Factor 4:  The interest of the public

The public has three primary interests in habeas petitions: the competing interest in the State's sentences being enforced, the State not incarcerating individuals in violation of the United States Constitution, and an interest in being protected from dangerous individuals.[79]

Since it has been found that Manley's conviction was obtained on unconstitutional grounds, and it is expected that he will prevail upon appeal,[80] the public's interest in preventing unconstitutional incarcerations trumps the public interest in seeing enforcement of state sentences.[81]  Public interest in prevention of the release of dangerous individuals has only been used as justification for preventing release in cases where petitioners had been denied effective affirmative defenses like insanity, or other legal factors, suggesting that Manley poses a continuing and present danger to the public if released.

The State has not presented an argument that Manley is an active danger to the public, aside from the fact of his now vacated conviction.  However, the record does indicate potential support for such a contention.  At age 16, Manley committed two aggravated assaults, which resulted in his incarceration from age 16 to age 25.[82]  The record, however, makes no mention of any other instance of criminal conduct by Manley, violent or otherwise,

---

[79] *Poindexter*,  2007 WL 2780556, at *4.

[80] *Supra* at 14-15.

[81] *Poindexter*, 2007 WL 2780556, at *4; *see also, Burdine*, 87 F. Supp. 2d at 717.

[82] ECF # 30 at 15 (citing to ECF # 19 at 772-73).

since that time other than the incident resulting in his conviction.  While a previous record of violent crime is not without significance, since the previous acts are sufficiently removed in time, I believe that the facts do not support a finding that Manley is a habitual violent criminal who must remain in custody for the interest of the public.

The only contemporaneous instance of violence by Manley at issue in this case is Manley's fatal shooting of Stephen Glover.  Manley claims that this shooting was self defense,[83] a determination he did not receive because of ineffective assistance of counsel.[84] Since Manley's conviction was vacated on these grounds,[85] there is at present insufficient reason for the Court to believe that Manley continues to pose a danger to the public today. The public interest favors rejecting a stay.

e.    *Overall analysis of the Hilton factors*

The *Hilton* factors weigh in Manley's favor in light of the guidance given by the Supreme Court in that decision.  The Court stated in *Hilton*, "the balance [between the interest of Manley and the State] may depend to a large extent upon determination of the State's prospects of success in its appeal ... continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release."[86]  Of the four

---

[83] ECF # 14 at 1.

[84] ECF # 30 at 12 (citing to ECF # 19 at 592-609).

[85] ECF # 30 at 21.

[86] *Hilton*, 281 U.S. at 777-78.

factors, only the second factor leans in favor of the State.  Following the established federal law, this Court rejects the State's request for a stay of judgment.

**2.     *Should Manley be granted release on his own recognizance on the basis of Rule 23(C) of the Federal Rules of Appellate Procedure?***

The law requires that Manley be released pending the decision of the appellate court. Federal Rules of Appellate Procedure 23(c) states, "[w]hile a decision ordering the release of a prisoner is under review, the prisoner must ... unless ... a judge orders otherwise ... be released on personal recognizance, with or without surety," creating a presumption of release anytime the Court issues an order to release Manley.  A court order to release Manley came into effect when the State violated the terms of the conditional writ issued by this Court.[87]

This presumption may then be overcome if the Court chooses to employ its broad discretion to stay the order releasing Manley.  The Court applies the traditional factors governing a court's decision to stay a civil judgment.[88]  Rejection of the State's request for a stay of judgment leaves the path open for the Court's unconditional writ to order Manley's release.  The *Hilton* Court equated the standard of rejecting a state's request for a stay of a judgment ordering release, and the exception it carved out, to Rule 23(c) motions.  The *Hilton* decision notes "a court's denial of enlargement to a successful habeas petitioner pending review of the order granting habeas relief has the same effect as the court's issuance of a stay of that order."[89]

---

[87] *Supra* at 10-12.

[88] *Hilton*, 281 U.S. at 776.

[89] *Id*. at 775-76.

Since I have already rejected the State's request for a stay of judgment, by identical reasoning I reject any argument by the State against the release of Manley pursuant to Rule 23(c).  Manley should be released pursuant to Rule 23(c).

Pursuant to Rule 23(c), it is necessary to determine if, and if so in what amount must Manley post in surety for his release.  A hearing will be held at a later date to make this determination.

## C.      Do Ohio's speedy trial laws bar Manley's retrial?

Not withstanding arguments from both sides on whether Manley can be retried, this issue is unripe for judicial determination and this time.  On the one hand, Manley claims that the Ohio state speedy trial rules bar his retrial.[90]  On the other, the State counters that Manley has no statutory right to a speedy retrial.[91]  No retrial of Manley has been attempted in Ohio's state courts by the State at this time, thus this issue is purely speculative.  Therefore, this question is not ripe, and this Court need not decide this issue at this time.  If the State chooses to retry Manley at a later date, this question may be duly raised to the appropriate court at that time.

## V. Conclusion

District Judge Hittner in *Burdine* put it aptly when he stated "the State seeks to minimize its failure to comply with established procedural rules as 'excusable neglect.'  However, a similar procedural error by defense counsel in a capital case could result in a

---

[90] ECF # 38 at 2.

[91] ECF # 39 at 3.

defendant's execution ... Equal justice under the law in American jurisprudence mandates that the same principles and rules be applied to a criminal defendant as to the entity of The State."[92]

Here too, the State's error may have been "only" procedural.  Nonetheless, the procedures are equally applied principles, cutting against both the State and criminal defendants alike.  To hold otherwise would not be only an injustice but an infringement upon the authority of Congress to promulgate Civil and Appellate rules.

It should also be noted that this Court's unconditional order for release does not, of itself, bar the State from then subsequently bringing the appellant to trial at a later date.  The Court's jurisdiction ceases upon the defendant's release, because "the grant of habeas corpus by [the court] and petitioner's unconditional release simply means that petitioner's prior conviction [...] has been vacated, is null and void, and that petitioner is no longer subject to confinement as a result of that conviction."[93]  If there are alternative bases for barring Manley's retrial, they should be resolved at the appropriate forum and only if the State attempts to retry Manley.

Based on the foregoing analysis, the Court grants Tierre Manley's motion for release. Manley is entitled to be released on terms to be determined at a later hearing while the appeal of the habeas relief granted to him is pending.  The parties are ordered to appear before the

---

[92] *Burdine*, 87 F. Supp. 2d at 718.

[93] *House*, 2008 WL 2235235, at *4.

Court on Tuesday, September 9, 2008, at 10:00 a.m. for a hearing to determine whether Manley should post a surety before his release pending appeal.

     IT IS SO ORDERED.


Dated:  July 17, 2008                              s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge